In re H. Roger **LAWLER**, et al., **Debtors**.

H. Roger **LAWLER**, et al., **Plaintiffs**,

v.

Larry **BRINKERHOFF** f/d/b/a **Brinkerhoff Pump & Drilling Co.**, **Defendant**.

Misc. No. 586–501.

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

July 1, 1987.

See also, Bkrtcy., 75 B.R. 979.

C. Thomas Wesner, Jr., Dallas, Tex., for Lawler.

Larry Brinkerhoff, pro se.

Robert Yaquinto, Dallas, Tex., Disbursing Agent.

MEMORANDUM OF OPINION CONCERNING LAWLER'S COMPLAINT AGAINST BRINKERHOFF

JOHN C. AKARD, Bankruptcy Judge.

*Procedural Background*

On January 9, 1976, an involuntary petition in bankruptcy was filed against H.

Roger Lawler (Lawler) in the District of Nevada. The case was transferred to the Northern District of Texas, Dallas Division, on June 6, 1976 and on January 20, 1978 Lawler consented to an adjudication of bankruptcy. For a time the case was administered under Chapter VII of the Bankruptcy Act with L.E. Creel, III (Creel) acting as Receiver and Trustee. Subsequently, the case was converted to a Reorganization under Chapter XI of the Bankruptcy Act with Creel acting as the Operating Trustee and Disbursing Agent. Apparently, through various actions brought by the Trustee, it was determined that Lawler was solvent. A "New Plan of Arrangement" was confirmed on April 30, 1984. One of the provisions of that Plan was that unsecured creditors were to receive the full amount of their claims together with interest on that amount from January 9, 1976.

On April 27, 1984, Larry Brinkerhoff, reciting that he had formerly done business as Brinkerhoff Pump & Drilling Co. (Brinkerhoff), filed a claim in these proceedings for $23,435.40. The claim was for work done during 1974 and 1975, almost ten years prior to the filing of the claim, but within two years prior to the filing of the involuntary petition against Lawler. The claim is No. 103 on the Court's Claim Docket.

By Order dated June 14, 1985, Creel was relieved of his responsibilities and instructed to pay from deposits which he held as Disbursing Agent, his own authorized fees and expenses of $39,669.90 as well as the sum of $1,941,747.00 to Robert Yaquinto, as Special Disbursing Agent and Michael Youdin, Clerk of the U.S. Bankruptcy Court for the Northern District of Texas, to be held jointly and to be disbursed pursuant to the terms of that Order. Any funds remaining were to be paid to Lawler. The June 14, 1985 Order specified that the funds held by Yaquinto and Youdin were to be placed in various accounts for identified creditors of the estate. Included in this account was an amount of $306,747.00 to be held for unpaid creditors who are identified on Exhibit A to the Order. Brinkerhoff Pump is listed on Exhibit A as holding Claim No. 103 in the amount of $23,435.40

with interest to date in the amount of $22,263.63 for a total of $45,699.03. The Order provides as follows:

(c) The amount of $306,747 which is hereby fixed by the Court as the amount necessary to fully to protect the unpaid creditors of the estate, priority, unsecured and secured identified on Exhibit A hereto, which shall be held in an account to be designated the "Lawler Creditors Trust Account", pending final determination of the claims of such creditors; at such time as the claim of any creditor whose claim is secured under this paragraph is determined by a final order of a court of competent jurisdiction, the funds of the Lawler Creditors' Trust Account shall be disbursed to such creditor, to the extent required by such order and, to the extent the amount to be disbursed to such creditor is less than the amount of the creditor's claim, plus interest as provided under the New Plan of Arrangement, then the remainder shall be immediately disbursed to H. Roger Lawler; the funds securing the claims with interest of all scheduled creditors who do not file proofs of claims within the time specified in Rule 355 of the Bankruptcy Rules of 1973 shall be immediately disbursed to H. Roger Lawler.

The Order further provides that claimants shall look solely to the appropriate deposit designated for payment and not to Lawler.

On August 15, 1984, Lawler filed an Objection to Claim 103 and various other claims asserting that they were filed after March 1, 1984, which was, according to Lawler, the Bar Date established by the Court. That ground of objection was apparently resolved between the Trustee and Lawler because it does not appear further. On February 15, 1985, Lawler filed an Amended Objection stating that "the Debtor lacks knowledge that goods and services were provided by the claimant."

On May 16, 1985, Lawler filed a Complaint against Brinkerhoff asserting that the invoices attached to Brinkerhoff's claim showed that four invoices totaling $9,477.93 were addressed to Lloyd Ginnochio (or Ginnochio Livestock Co.) and that

Brinkerhoff thereby made a knowing misrepresentation of fact in the Proof of Claim. Lawler asserted that he relied on this misrepresentation in determining the amount of deposit to be made pursuant to the New Plan of Arrangement and that since that time he paid interest on the amounts which were deposited to cover Brinkerhoff's claim. Lawler further asserted that he incurred significant attorneys' fees in defending the "fraudulent claim of Brinkerhoff." The Complaint requested that Brinkerhoff's claim be denied, that Lawler be awarded actual damages in the amount of $45,699.03 representing the deposit set aside to secure the Brinkerhoff claim with interest through June 11, 1985, and that Lawler receive punitive damages in the amount of $100,000.00 and $20,000.00 attorneys' fees.

The foregoing Complaint was filed on the eve of a hearing on Lawler's Objection to Brinkerhoff's claim held on May 17, 1985 before the Honorable John C. Ford, United States Bankruptcy Judge. This Court reviewed the transcript. Judge Ford conducted the hearing only on Lawler's Objection to the Claim and did not hear the Complaint because it had only been filed the preceding day.

Judge Ford ruled from the bench at the May 17, 1985 hearing. On June 11, 1985, he signed Findings of Fact and Conclusions of Law. Subsequently, the parties filed an Agreed Order Vacating the Findings of Fact and Conclusions of Law dated July 22, 1985. The parties anticipated that Judge Ford would be able to review this matter and render a decision prior to his retirement from the bench. Unfortunately, he was unable to do so. On March 27, 1986, the entire Lawler case was transferred to the Lubbock Division of the Northern District of Texas because both of the Dallas Bankruptcy Judges had recused themselves. At a status conference on May 28, 1986, the attorneys for Brinkerhoff and Lawler agreed that this Court could review the transcript of the May 17, 1985 hearing and the record of this matter to determine the Objection to Claim. After such review, this Court determined that Judge Ford's verbal Order of May 17, 1985 allowed

Brinkerhoff's Claim in the amount of $13,815.30, plus interest as specified in the New Plan of Arrangement, and disallowed the Claim to the extent of $9,620.10 with respect to the Ginnochio invoices. This Court's Order Concerning the Claim of Larry Brinkerhoff dated July 21, 1986 has not been appealed.

After proper notice, on September 8, 1986, this Court allowed the attorneys for Brinkerhoff to withdraw for the reason that they had not received any compensation. No other attorneys have appeared on Brinkerhoff's behalf, nor has he appeared in these proceeding in any manner subsequent to that time.

The hearing on Lawler's Complaint against Brinkerhoff was scheduled for October 14, 1986. Notice of hearing was given to Brinkerhoff's attorneys and the setting was mentioned in the Order of July 21, 1986. The attorneys assured the Court that Brinkerhoff was aware of that setting. He did not appear on October 14, 1986. Due to the crowded condition of the Court's calendar on that date, the Court was not able to reach Lawler's Complaint against Brinkerhoff and, by announcement made in open Court, the matter was continued to December 8, 1986. No further written notice was sent to Brinkerhoff and he did not appear on December 8, 1986.

### Issues

As requested by the Court, Lawler submitted a Pretrial Order. This Court's directives require that the Pretrial Order be jointly submitted by the parties. The proposed Pretrial Order submitted by Lawler indicated that a draft had been submitted to Brinkerhoff, but that no response was received.

Lawler's proposed Pretrial Order reiterated the grounds stated in the Objection including a reference to 18 U.S.C. § 152. That section makes it a criminal offense to knowingly and fraudulently make a false oath or account in a bankruptcy proceeding. This is a criminal statute and does not offer any civil relief. Consequently, it is inapplicable to the present proceeding.

The Pretrial Order mentioned Rule of Bankruptcy Procedure 911 which applied to Bankruptcy Act cases. The proposed Pretrial Order also mentioned present Bankruptcy Rule 9011 which was promulgated after adoption of the Bankruptcy Code. In pertinent part, these rules are the same and both, basically, are the same as Fed.R. Civ.P. 11. None of these Rules were mentioned in the Complaint in which Lawler filed against Brinkerhoff in 1985.

Rule of Bankruptcy Procedure 911 provides:

If a pleading or written motion or application, is not signed or is signed with intent to defeat the purpose of this Rule, it may be stricken as sham and false, and the case may proceed as though the paper had not been served or filed. For a willful violation of this Rule, an attorney may be subjected to appropriate disciplinary action.

The sanctions under Bankruptcy Rule 9011 are more substantial. That Rule provides:

If a document is signed in violation of this Rule, the Court on Motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an Order to Pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

The only portion of the Complaint describing any improper actions on the part of Brinkerhoff is the following:

In alleging that Lawler is indebted to Brinkerhoff for services provided to Ginnochio or his cattle company and invoiced to such other persons, Brinkerhoff made a knowing material misrepresentation of fact regarding the liability of Lawler for the amount set forth in the Proof of Claim.

The issues of fact as stated by Lawler in the proposed Pretrial Order are:

1. Whether Brinkerhoff presented a false and/or fraudulent Proof of Claim against the estate of Lawler by making material misrepresentation of fact regarding the liability of Lawler for the amount set forth in the Proof of Claim. Lawler's position is that this issue is concluded by the Order Concerning the Claim of Larry Brinkerhoff signed on July 12, 1986 in which this Court determined that $9,620.10 of the claim was incorrectly based on invoices directed to entities other than Brinkerhoff.

2. Whether Brinkerhoff knowingly presented the false and/or fraudulent Proof of Claim. Lawler's position is that this issue is concluded by the Order Concerning the Claim of Larry Brinkerhoff signed on July 21, 1986 in which this Court determined that $9,620.10 of the claim was incorrectly based on invoices directed to entities other than Brinkerhoff.

The balance of the issues as stated by Lawler relate to violation of Bankruptcy Rules and the damages suffered by Lawler.

### Discussion

This Court's ruling of July 21, 1986 was simply to document the ruling which Judge Ford made at the May 17, 1985 hearing. For this reason, this Court again carefully reviewed the transcript of that hearing and Brinkerhoff's claim in these proceedings.

First turning to the claim: It was filed in the amount of $23,435.40 on April 27, 1984 by Larry Brinkerhoff formerly doing business as Brinkerhoff Pump & Drilling Co. Two ledger sheets and several invoices were attached to the claim. One ledger sheet was on Lawler Cattle Co. (which is one of Lawler's businesses and is part of these consolidated proceedings). The ledger sheet begins with September, 1983. Charges totaling $31,000.00 were paid in October, 1983. Various other charges were made in December, 1984 and March, 1985. The last entry is dated August 2, 1985 and shows a balance of $13,815.30. At one point a check in the amount of $1,500.00 dated April 16, 1984 received from Ginnochio Livestock Co. was credited

to this account, but the entry was crossed out.

The other ledger sheet was on Ginnochio Livestock Co. It contained the notation "See file on: Lawler Cattle Company, Box 40, Gerlach, Nev." There are a number of entries on that ledger sheet ending with a statement of October 7, 1974 for a balance of $9,620.10. At one point a check for $9,477.73 was received on the account but it was returned for insufficient funds.

The invoices attached appear to substantiate the entries on the ledger sheets. At the May 17, 1985 hearing, it was established that Mr. Lawler had a large ranch in Nevada upon which there were a number of water wells. Brinkerhoff serviced those wells at various times at the request of the ranch managers. Mr. Lawler had no direct knowledge of the day-to-day operations of the ranches because he left those to the ranch managers. He also relied on them to forward appropriate bills to his office in Dallas. Apparently he had difficulty with some of the managers because the testimony indicated that he fired two of them.

Mr. Brinkerhoff testified that he had formerly operated Brinkerhoff Pump & Drilling Company in Winnemucca, Nevada, which was approximately 125 miles from Gerlach, Nevada, where Lawler's ranch was located. Testimony indicated that the Ginnochio ranch was located in the same area.

At the May 17, 1985 hearing there was no proof presented, other than the statements on the ledger cards, that the charges to Lawler Cattle Co. and Ginnochio Livestock Co. were related. Judge Ford therefore ruled that Brinkerhoff "is going to get just about what a lot of times these lawyers accuse me of doing, trying to strike a happy medium which is what he filed for. That's $13,815.30 and he's entitled to interest on that from the date this bankruptcy case was filed ..." (Tr. 51–52).

This Court's Order of July 21, 1986 did no more than follow Judge Ford's finding of allowing the claim of Brinkerhoff in the amount of $13,815.30 plus interest and deny the balance.

Lawler's position is that since a portion of Brinkerhoff's claim was denied, the claim must be considered false or fraudulent. The facts of this case lend no support whatsoever to that conclusion.

Brinkerhoff was no longer in the pump business. The claim was prepared in 1984 based upon records that were approximately ten years old. Certainly the reference to Lawler Cattle Company on the Ginnochio Livestock Co. ledger sheet would cause someone to believe that they were related. They were at least close to each other, if not adjacent, and they had similar problems. In this Court's experience, it is not uncommon for ranchers who have property in the same proximity to work together on a number of matters together, including water wells.

Lawler's attorneys had ample opportunity at the May 17, 1985 hearing to ask of Brinkerhoff why he included the Ginnochio Livestock Co. invoices in the claim, but they failed to do so.

There was no evidence presented at the May 17, 1986 hearing that the inclusion of the Ginnochio Livestock Co. invoices was false or fraudulent. The only conclusion that can be drawn is that there was a bookkeeping error which was carried forward when the claim was prepared some ten years after the fact.

Lawler cannot rely on the fact that Brinkerhoff did not appear at hearing nor that Brinkerhoff filed no response to the Complaint as none is required under the Rules. The burden is on Lawler to prove his case. This he failed to do.[1]

### Damages

Although this Court concluded that the claim filed by Brinkerhoff was neither

---

1. From the record in this case, one can readily imagine that Brinkerhoff is a man of modest means who could not afford to defend the continuous litigation which Lawler's seeming inexhaustible supply of funds for attorneys' fees generates. This is not the only instance known to this Court of a party "giving up" in order to avoid the further expenses of Lawler's constant pleadings. The fact that this case has been active in the Bankruptcy Courts since January 9, 1976 is indicative of Lawler's litigious nature.

false nor fraudulent, to date Lawler has apparently appealed every adverse ruling made by a Bankruptcy Judge in this case. For that reason, the Court feels bound to comment concerning damages.

At the time Brinkerhoff filed his claim, Rule of Bankruptcy Procedure 911 was in force. It is the opinion of the Court that Rule 911 controls this case. The only sanction granted by that Rule for the filing of a false or fraudulent matter by an individual is that it be stricken. Thus the maximum recovery Lawler would be allowed is denial of the Brinkerhoff claim in full.

Lawler's proposed Pretrial Order, under the heading "Summary of Lawler's Claim," carries forward the four demands of the Complaint which are:

a. Denying the claim of Brinkerhoff. As indicated above, the Court feels that this is the maximum which Lawler would be allowed under any circumstances.

b. Awarding actual damages "in the amount of $45,699.00 representing the deposit set aside to secure the fraudulently filed claim of Brinkerhoff, with interest through June 11, 1985." Lawler asserts that he had to make a loan to fund the Plan and has had to renew the loan to the current date. His testimony at the hearing on December 8, 1986 was that his interest on this account had been $13,785.00. In this regard, Lawler's testimony conflicts with the Order of June 14, 1985 which recites that Creel, as Disbursing Agent, is directed "to pay from the current deposits which he holds as Disbursing Agent" (page 2) to Yaquinto and Youdin the sums described above. It may be that Lawler was required to borrow funds to deposit with Creel as Disbursing Agent, but that matter was not clear in the testimony. Even if Lawler did borrow funds to create this account, the funds held by Yaquinto and Youdin have undoubtedly been placed in interest-bearing accounts and Lawler will receive whatever funds remain in the accounts after payment of creditors. Thus, Lawler will receive the interest on the funds held by Yaquinto and Youdin, which should offset the interest which he had to pay on the borrowed funds. Lawler's testimony made no effort to give credit for the money, including interest thereon, which would be returned to him by Yaquinto and Youdin.

c. Awarding "punitive damages in the amount of $100,000.00." There was absolutely no evidence to support the award of punitive damages. This is yet another example of Lawler attempting to use the Bankruptcy Court as a sword to extract funds from those with whom he dealt rather than its proper purpose of shielding a debtor while an appropriate reorganization is under way.

d. Awarding $20,000.00 "reasonable attorneys' fees." At the hearing on December 8, 1986, Mr. Wesner, attorney for Lawler, stated that his fees and expenses in this matter totaled $5,145.50. He did not submit an itemized statement of those fees. The Objection to Brinkerhoff's claim, the Amended Objection and the Complaint against Brinkerhoff were all filed by Lawler's prior attorney. The prior attorney also appeared on Lawler's behalf at the May 17, 1985 hearing. It appears that Mr. Wesner's activities with respect to the Brinkerhoff claim consist of a conference with the Court and opposing counsel (which was one of a series of similar conferences all held during one afternoon) and preparation for, and attendance at the hearing on December 8, 1986. That hearing did not last more than one hour. The hearing was in Lubbock which required Mr. Wesner to travel to Lubbock for that purpose. The Court feels that, including travel expense, $2,500.00 would be a generous award of attorney's fees and expenses in this matter. No evidence was presented concerning the attorney's

fees and expenses of Lawler's prior attorney.

Consequently, if this Court had found that Brinkerhoff's claim violated Rule of Bankruptcy Procedure 911, this Court would have reduced the claim by $2,500.00 and ordered the balance paid with interest from January 9, 1976.

### Conclusions

This Court concludes that Brinkerhoff's claim is neither false nor fraudulent, that it does not violate Rule of Bankruptcy Procedure 911, Bankruptcy Rule 9011 or Fed.R. Civ.P. 11 and will order the Disbursing Agent to pay Brinkerhoff the sum of $13,-815.30 plus interest at the rate of 10% per annum from January 9, 1976 until the date of payment.

Order accordingly.[2]

---

2. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.